MASSACHUSETTS BAY INSURANCE
COMPANY, et al., Plaintiffs

v.

BUSHMASTER FIREARMS,
INC., Defendant

No. CIV.03–52–P–H.

United States District Court,
D. Maine.

May 20, 2004.

James D. Poliquin, Norman, Hanson & DeTroy, Portland, ME, for Massachusetts Bay Insurance Company and Hanover Insurance Company, Plaintiffs.

Christopher R. Drury, Louise K. Thomas, Pierce Atwood, Portland, ME, for Bushmaster Firearms, Inc., Defendant.

### DECISION AND ORDER ON PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

HORNBY, District Judge.

John Allen Muhammad and Lee Boyd Malvo used a Bushmaster XM–15 E2S .223 caliber semi-automatic assault rifle for their terrible shooting rampage in the fall of 2002. The defendant Bushmaster manufactured the weapon in Windham, Maine. Muhammad and Malvo obtained the weapon from Bull's Eye Shooter Supply, a retail dealer in the State of Washington.

Victims and families of victims have sued Bull's Eye and its owners, Muhammad, Malvo, Bushmaster and unnamed gun distributors in Washington State Court, seeking damages. They make two claims against the gun industry defendants: first, that they created a "public nuisance" that affected the public generally and these victims in particular; and, second, that they negligently (with gross negligence, recklessness and outrageous indifference) distributed assault weapons, and are liable for negligent entrustment.

This separate lawsuit here in the District of Maine will determine which insurance carriers have the duty to defend Bushmaster in the Washington State Court lawsuit. Bushmaster purchased commercial general liability ("CGL") policies from Massachusetts Bay Insurance Company ("Massachusetts Bay") ($1 million per occurrence and $2 million aggregate), excess/umbrella policies from Hanover Insurance Company ("Hanover") ($1 or $2 million per occurrence and aggregate, depending on the year), and specified products and completed operations coverage (firearms were specified) from Evanston Insurance Company ("Evanston") ($1 million per occurrence). The annual premiums were $175,000 to Evanston, $1,300 to $5,000 to Hanover, depending on the year, and $3,500 to $9,221 to Massachusetts Bay, also depending on the year.

Massachusetts Bay and Hanover seek a declaratory judgment that they have no obligation to defend Bushmaster in the Washington lawsuit. They have also named Evanston and all the Washington State Court plaintiffs as "parties-in-interest." Bushmaster has filed a counterclaim for breach of the insurance contracts and a declaratory judgment that Massachusetts Bay and Hanover do have a duty to defend it in the Washington lawsuit. Evanston has assumed the defense of Bushmaster in the Washington lawsuit, but subject to a reservation of rights and a substantial deductible ($100,000). It joins Bushmaster and all the parties-in-interest in contending that Massachusetts Bay and Hanover must join it in defending the Washington lawsuit.

Massachusetts Bay and Hanover have moved for summary judgment on their complaint and the Bushmaster counterclaim. The heart of the controversy is (1) the scope of the policies' exclusion for products-completed operations hazard coverage and (2) the scope of coverage for personal and advertising injury. I conclude that the policy exclusion of any products-completed operations hazard justifies Massachusetts Bay's and Hanover's refusal to defend Bushmaster, and that coverage for personal and advertising injury does not alter that result.

### LEGAL ANALYSIS

The parties agree that Maine law governs the determination whether Massachusetts Bay and Hanover have a duty to defend. The standard under Maine law is straightforward. I am to examine the allegations of the Washington state court Amended Complaint [1] against the coverage and exclusions of the insurance policies, and determine if there is potential coverage for any of the allegations. *See, e.g., Union Mut. Fire Ins. Co. v. Inhabitants of Topsham,* 441 A.2d 1012, 1015 (Me.1982) ("In order for the duty of defense to arise, the underlying complaint need only show, through general allegations, a possibility that the liability claim falls within the insurance coverage. There is no require-

---

1. I examine the "Amended Complaint for Damages" as stipulated by the parties. Stipulation ¶ 2 (Docket Item 36). A Second Amended Complaint has been filed, but the parties agree that it does not alter the analysis of any insurance coverage issue. *Id.*

ment that the facts alleged in the complaint specifically and unequivocally make out a claim within the coverage.") If there is, then the insurance company has the obligation to defend the claim even though ultimately it may not be required to indemnify (for example, if Bushmaster ultimately is held not liable, or liable on a basis that is outside the policy coverage).

### Products–Completed Operations Hazard Exclusion

The Massachusetts Bay and the Hanover policies contain an endorsement[2] that provides: "This insurance does *not* apply to 'bodily injury' or 'property damage' included within the 'products-completed operations hazard.'" *See* Exs. C and D to Stipulation (emphasis added). Those terms are defined as follows:[3]

**"Products-completed operations hazard":**

a. Includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:

    (1) Products that are still in your physical possession; or

    (2) Work that has not yet been completed or abandoned. . . .

The word "your" refers to the insured, here Bushmaster.

**"Your product"** means:

a. Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

    (1) You; . . .

**"Your product"** includes:

a. Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product"; and

b. The providing of or failure to provide warnings or instructions.

> .    .    .    .    .

**"Your work"** means:

a. Work or operations performed by you or on your behalf; and

b. Materials, parts or equipment furnished in connection with such work or operations.

**"Your work"** includes:

a. Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work"; and

b. The providing of or failure to provide warnings or instructions.

*See* Ex. C to Stipulation.

■ It is indisputable that the Bushmaster assault rifle is "your [Bushmaster's] product" within the meaning of these policies and that the injuries it inflicted occurred away from Bushmaster's premises and after Bushmaster had completed all its work on manufacturing the assault rifle and had surrendered possession of it. The damage it created was therefore within the products-completed operations hazard and excluded from coverage. Bushmaster makes a valiant attempt to escape this plain meaning of the insurance contracts, but is ultimately unpersuasive. There is no ambiguity in the language; the exclusion was not required to use the actual word "firearms" to be effective; there is no reason to turn to parol evidence, *see, e.g., Am. Protection Ins. Co. v. Acadia Ins. Co.*, 2003 ME 6, ¶ 11, 814 A.2d 989, 993 (stating that the "interpretation of an unambiguous contract must be determined

---

**2.** The endorsement comes from Insurance Services Office, Inc. (ISO), language copyrighted in 1984.

**3.** I have used the Massachusetts Bay language. The Hanover language has no material differences.

from the plain meaning of the language used … without resort to extrinsic evidence") (citation and internal quotations omitted); the exclusion is not limited to defective products; it is not limited to goods that are unaltered;[4] and the damage to Muhammad's and Malvo's victims "aris[es] out of" Bushmaster's product, the assault rifle.

My conclusion that there is no coverage is buttressed by the First Circuit's decision in *Brazas Sporting Arms, Inc. v. Am. Empire Surplus Lines Ins. Co.*, 220 F.3d 1 (1st Cir.2000), also a case concerning injuries caused by firearms. That case applied Massachusetts law, but its reasoning about the meaning of the products-completed operations exclusion, language virtually identical to that contained in these policies, is persuasive in Maine as well. The insured in *Brazas* argued that the exclusion was limited to defective products, but the First Circuit rejected that argument:

> The products-completed operations hazard includes in plain and unambiguous language "all 'bodily injury' and 'property damage' occurring away from premises you own or rent and arising out of 'your product.' " Where, as here, the language of the exclusion provision is unambiguous, the text should be given its plain meaning. In this case, the plain meaning of the exclusion is that it applies to all product-related injuries.

220 F.3d at 6 (citation omitted). The First Circuit therefore declined to limit the products-completed operations exclusion language to defective products. *Id.* The insured in *Brazas* also argued that because it had been charged with oversupplying the market with firearms, the underlying

lawsuits were not actually alleging injuries from its products, but injuries "caused by the company's business management and strategy, thereby rendering the exclusion provision inapplicable." 220 F.3d at 5. The First Circuit rejected that argument as well, finding that the "alleged misconduct is the over-distribution of firearms and the proximate cause of the plaintiffs' injuries are firearms." 220 F.3d at 8. Likewise, here, Bushmaster's alleged misconduct is the method by which it distributed firearms and the cause of the Muhammad and Malvo victims' injuries is a firearm.

Bushmaster also points to allegations from the Washington State lawsuit in which the victims attempt to establish their public nuisance cause of action.

> Defendant Bushmaster and John Doe Distributor(s) breached this duty by purposefully creating and maintaining a distribution chain whereby they sold their guns to dealers like Bull's Eye *without adequate screening of dealers* to determine whether they sold and stored guns responsibly to prevent criminal acquisition, and *without adequate training, monitoring or conditions* to prevent the diversion of lethal firearms into criminal hands. Although reasonable persons, under similar circumstances, would have exercised care to prevent their guns from being sold and distributed in a grossly negligent manner, including screening, monitoring, training and implementing inventory control and reasonable sales practices, basic record-keeping and proper security to prevent dozens of lethal firearms from "disappearing" from a retailer's store, none of the gun industry defendants took these reasonable steps. Their conduct consti-

---

**4.** Mounted to the rifle seized from Muhammad and Malvo were a battery-operated scope and bipod that were not manufactured by Bushmaster. Bushmaster's Statement of

Add'l Material Facts ¶ 47 (Docket Item 43); Pls.' Reply to Bushmaster's Add'l Statement of Material Facts ¶ 47 (Docket Item 52).

tuted negligence. (Hanover's SMF ¶ 8, Underlying Am. Compl. ¶ 54) (emphasis added).

Bushmaster and John Doe Distributor(s) could have taken, but failed to take, reasonably available steps to restrict or impede the flow of firearms to irresponsible dealers and persons prohibited from purchasing firearms, including but not limited to:

[list of 12 items omitted]

(Bushmaster's ASMF ¶ 31, Underlying Am. Compl. ¶ 91).

The long-term cumulative effect of this wrongdoing has been to create an environment in which criminals have easy access to guns thereby endangering the health and safety of the public. This situation "[d]eprived plaintiffs and the general public of the right to use public spaces except at the cost of fear and apprehension and the risk of injury or death and constitutes a public nuisance." (Hanover's SMF ¶ 9, Underlying Amended Complaint ¶ 95.)

Def.'s Opp'n to Pls.' Mot. for Summ. J. at 31 (Docket Item 42). From paragraphs like these, Bushmaster argues that the Amended Complaint in the Washington lawsuit exposes it to liability for its general business practices, and that the claimed damages are not just the deaths and injuries inflicted by its product, but fear and apprehension and risk created by its distribution methods. According to the Affidavit of Bushmaster's Vice President of Ad-

ministration and Human Resources, the "monitoring, supervising, and screening activity that Bushmaster allegedly should have undertaken" would have to occur on the Bushmaster premises in Windham. Faraday Aff. ¶ 5 (Docket Item 46); Bushmaster's Statement of Add'l Material Facts ¶ 40; Pls.' Reply to Bushmaster's Add'l Statement of Material Facts ¶ 40. As a result, Bushmaster argues that its CGL and umbrella policies should provide a defense that is not excluded by the language of the products-completed operations hazard exclusion.

Bushmaster is correct that the Washington state court Amended Complaint makes those broad allegations, but the Amended Complaint follows them with allegations of special injury to the plaintiffs in that lawsuit, the actual victims of Muhammad and Malvo: "Plaintiffs have each suffered and continue to suffer severe and special injuries as a result of the nuisance, as described above, distinct from and more severe than that suffered by the general public." "[P]laintiffs have been specially injured and these injuries are specific to the plaintiffs and are not shared by the general public." Ex. B to Stipulation, Am. Compl. for Damages ¶¶ 97, 112.[5] The special damages alleged in the Washington lawsuit are the deaths and injuries inflicted by the Bushmaster assault rifle upon the particular Muhammad and Malvo victims. Those damages are the exposure of

---

**5.** Washington, like other states, does not allow just any member of the public to sue for a public nuisance like that alleged here. Instead, only those who are *specially* damaged may sue, and they may recover only those special damages that they individually suffer, not the damages suffered by the public at large. *See, e.g.*, Wash. Rev.Code § 7.48.210 (2003); *Miotke v. City of Spokane*, 101 Wash.2d 307, 678 P.2d 803, 817 (1984); *Lampa v. Graham*, 179 Wash. 184, 36 P.2d 543, 544 (1934); *State of Washington ex rel. Van-*

*dervort v. Grant*, 156 Wash. 96, 286 P. 63, 65 (1930). One who is specially damaged may also be entitled to sue for an abatement of the public nuisance. *See* Wash. Rev.Code § 7.48.020. There is no such request in the Washington state court Amended Complaint to abate the asserted public nuisance of how Bushmaster permits its assault weapons to be distributed. Bushmaster nowhere argues that the insurers are obligated to defend it on an abatement claim.

Bushmaster on this count of the Washington state court Amended Complaint, and that risk is excluded from coverage by the products-completed operations hazard exclusion as bodily injury occurring away from the Bushmaster premises and arising out of Bushmaster's product.

Bushmaster also points to the following two paragraphs as showing damages "unrelated to the Muhammad and Malvo attacks." Def.'s Opp'n to Pls.' Mot. for Summ. J. at 32.

> On October 14, 2002, they were shopping at a Home Depot in Seven Corners Shopping Center in Fairfax County, Virginia. At 9:15 p.m. they were loading packages into their car in the Home Depot parking lot. As her husband Ted stood next to her, Linda Franklin was shot and killed with the Bushmaster assault rifle.
>
> .    .    .    .    .
>
> Lisa Brown is the mother of Iran Brown, a 13 year old boy who was shot in the chest and wounded with the Bushmaster assault rifle at Benjamin Tasker Middle School in Bowie, Maryland.

On October 7, 2002, Iran Brown was shot shortly after he was dropped off at school. He was rushed to the nearest medical facility and transferred to Children's Hospital where he remained for over a month in critical condition. He continues to suffer emotionally and physically, and can be expected to into the future.

*Id.* (citations omitted). That is simply not a reasonable reading of those paragraphs. They describe emotional injury for the husband or the child flowing directly from use of the assault rifle.[6]

### Personal And Advertising Injury Coverage

The products-completed operations hazard exclusion does not extend to "personal and advertising injury" coverage under the CGL policy.[7] Thus, if the Washington lawsuit potentially states a claim within that coverage, the exclusion would be irrelevant and Massachusetts Bay would have a duty to defend Bushmaster.

■ According to the policy language: **"Personal and advertising injury"** means injury, including consequential

---

**6.** Bushmaster's speculation "that a legal or factual basis could be developed at trial that Mr. Franklin had a special apprehension of being in public places, and his knowledge that Bushmaster's business practices allegedly permit distribution of its firearms to criminals causes him emotional distress," Def.'s Opp'n to Pls.' Mot. for Summ. J. at 32, has no basis in the Amended Complaint. The same is true for the speculation "that a legal or factual basis could be developed at trial that the Browns continue to suffer emotional distress and fear of using public spaces as a result of Bushmaster's alleged negligent act of failing to 'take any responsible action to prevent Bull's Eye—which [Bushmaster] deliberately chose and relied on to sell [its] weapons—from operating its business in such a grossly negligent manner that many of its guns "disappeared" from its store, with a highly foreseeable likelihood that they would be used in

crime.'" Def.'s Opp'n to Pls.' Mot. for Summ. J. at 32–33.

**7.** No duty to defend arises under the Hanover policies because the products-completed operations hazard exclusion in the umbrella policies applies to Coverages A and B (*i.e.*, bodily injury and property damage liability, and personal and advertising injury liability). *See* Ex. E to Stipulation, Form 472–0056 (9–98) ("stating that [u]nder Coverage A and B, this policy does not apply to any liability or expense arising out of the products/completed operations hazard ..."). *See also* Pls.' Mot. for Summ. J. at 9, 27 n. 5 (Docket Item 34). Bushmaster does not dispute this contention, stating only that the Massachusetts Bay CGL policy does not exclude liability for claims of personal or advertising injury. *See* Def.'s Opp'n to Pls.' Mot. for Summ. J. at 34 (Docket Item 47).

"bodily injury," arising out of one or more of the following offenses:

a. False arrest, detention or imprisonment ....

Bushmaster points to the following allegations of the state court Amended Complaint:

95. Gun industry defendants have engaged in the wrongful conduct described above over the course of many years. The long-term, cumulative effect of this wrongdoing has been to create an environment in which criminals have easy access to guns thereby endangering the health and safety of the public. This situation deprived plaintiffs and the general public of the right to use public spaces except at the cost of fear and apprehension and the risk of injury or death and constitutes a public nuisance.

.    .    .    .    .

111. At all relevant times, gun industry defendants knew or should have known that their conduct has an ongoing detrimental effect upon the public's health, safety and welfare, and the public's ability to be free from disturbance and reasonable apprehension of danger to person and property. Bushmaster and John Doe Distributor(s) engaged in irresponsible and wrongful sales and distribution practices and allowed Bull's Eye to engage in irresponsible and wrongful sales practices, all without just cause or excuse. These sales and business practices were under the control and direction of Bushmaster and John Doe Distributor(s). Likewise, Bull's Eye and its owners engaged in irresponsible sales and business practices and conduct as described herein without just cause or excuse. The necessary consequence of these actions was to interfere with the legal rights of plaintiffs so as to be injurious to health and essentially interfere with the comfortable enjoyment of plaintiffs' and the publics' lives. *See* Def.'s Opp'n to Pls.' Mot. for Summ. J. at 35; Ex. B to Stipulation ¶¶ 95, 111 (Docket Item 25). Bushmaster argues that these paragraphs suggest deterrence from using public spaces. Along with the fears of a bystander husband who witnessed his wife's murder and the ongoing suffering of a child who was shot but not killed, Bushmaster says that they raise allegations of detention or imprisonment giving rise to the duty to defend. But the coverage is for damages arising from the "offense" of detention or imprisonment. The allegations in the underlying Amended Complaint come nowhere near implying that the plaintiffs in the Washington lawsuit, be they victims or survivors, are accusing Bushmaster of such an offense.

I conclude that there is no potential coverage for personal and advertising injury.

### CONCLUSION

Massachusetts Bay and Hanover have no duty to defend Bushmaster in the Washington State Court lawsuit. Their motion for summary judgment is GRANTED.

So ORDERED.