[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 17-15528
Non-Argument Calendar
_____

D.C. Docket No. 0:17-cv-60293-FAM

JARED G. ANTON,

Plaintiff-Appellant,

versus

PHOENIX LIFE INSURANCE COMPANY,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(October 22, 2018)

Before ED CARNES, Chief Judge, WILLIAM PRYOR, and ANDERSON, Circuit
Judges.

PER CURIAM:

Jared Anton appeals the district court's grant of summary judgment to Phoenix Life Insurance Company on his claim alleging that Phoenix improperly terminated his life insurance policy.

I.

Anton purchased a life insurance policy from Phoenix's predecessor company in 1991. Anton's contract refers to the policy as a "flexible premium adjustable life insurance policy" because the contract did not require Anton to pay fixed premiums at a specified time. Instead, Anton could choose both the amount and timing of the premium payments, which the insurance company would place into a policy account. But the contract required Anton to fund his policy account with enough money to cover the costs of the insurance and monthly policy charges. The contract explains that if Anton failed to adequately fund his account, the policy would terminate after a 61-day grace period. The contract shows that Anton decided to make quarterly payments of $540 to fund his policy account.

In 1999 Phoenix sent Anton a certificate of insurance because Anton lost his copy of the original contract. The certificate states that it "in no way changes or modifies the terms of the conditions of the original [contract], but is evidence solely that the . . . policy was issued." But it also incorrectly states that Anton would pay his $540 premium annually (rather than quarterly, as he had decided to do in 1991).

2

The annual policy statements that Anton sent to Phoenix show that he did not make a premium payment between May 1998 and July 2005, and that he made payments sporadically after that.[1]  But his irregular payments were enough to cover the costs of insurance and the monthly policy charges, so Phoenix had no problem with them.  That changed in July 2016, when Anton received a letter from Phoenix notifying him that his policy had entered the 61-day grace period because there was not enough money in his policy account to cover the charges.  Anton did not make any payments during the grace period, so Phoenix terminated his policy in September 2016.

Anton sued Phoenix in state court and Phoenix removed the case to federal court on the basis of diversity jurisdiction.  Both parties moved for summary judgment and disagreed about whether Phoenix terminated Anton's insurance policy in accordance with the terms of the contract.  The district court granted summary judgment to Phoenix, a decision that Anton now appeals.

## II.

We review de novo a district court's grant of summary judgment and its interpretation of an insurance contract.  See Zucker for BankUnited Fin. Corp. v. U.S. Specialty Ins. Co., 856 F.3d 1343, 1348 (11th Cir. 2017).  And "we view all of the evidence in a light most favorable to the nonmoving party and draw all

---

[1] Anton made a total of 18 premium payments of at least $540 over the course of the 134 months from August 2005 to October 2016.

3

reasonable inferences in that party's favor." Procaps S.A. v. Patheon, Inc., 845

F.3d 1072, 1079 (11th Cir. 2016) (quotation marks omitted). Summary judgment

is appropriate if "there is no genuine dispute as to any material fact and the movant

is entitled to judgment as a matter of law." Id. (quotation marks omitted).

Anton contends that that the district court erred by granting summary

judgment to Phoenix. He argues that the conflicting language in the insurance

contract and the certificate about the timing of his $540 premium payments —

quarterly versus annually — created a contractual ambiguity as to how often those

payments were due. And that ambiguity, he continues, should be resolved in his

favor by interpreting the contract to require only annual premium payments. We

reject that argument.

Anton and Phoenix agree that Florida law applies to this case. "Under

Florida law insurance contracts are construed according to their plain meaning."

Taurus Holdings, Inc. v. U.S. Fidelity & Guar. Co., 913 So. 2d 528, 532 (Fla.

2005). While "[a]mbiguities are construed against the insurer and in favor of

coverage[,] . . . to allow for such a construction the provision must actually be

ambiguous." Id. And a provision is ambiguous only if "the relevant policy

language is susceptible to more than one reasonable interpretation." Swire Pac.

Holdings, Inc. v. Zurich Ins. Co., 845 So. 2d 161, 165 (Fla. 2003) (quotation marks

omitted). That "insurance policies may be confusing to persons not trained or

4

experienced in the form and language of insurance policies . . . does not make such policies or language legally ambiguous." Fla. Ins. Guar. Ass'n v. Sechler, 478 So. 2d 365, 367 (Fla. 5th DCA 1985). "[C]ourts may not rewrite contracts . . . ." Taurus Holdings, Inc., 913 So. 2d at 532 (quotation marks omitted).

With that law in mind we return to the language of the insurance contract. The plain meaning of that language requires the insured to adequately fund his policy account to cover the costs of the insurance and the policy's monthly charges.[2]  The contract states that if the insured fails to do that the policy will terminate after the conclusion of a 61-day grace period.[3]  And while "[t]he amount and timing of premium payments will affect" the total funds in the policy account, the insured "may pay premiums when and in the amount [he] chooses."  The point is that the amount and timing of premium payments is discretionary; the adequate funding of the policy account is not.

Here, Anton failed to do what the insurance contract unambiguously requires:  adequately fund his policy account.  The contract's and certificate's conflicting language about the timing of Anton's premium payments does not

---

[2] With respect to the policy account, the contract says that "[t]he premiums you pay are added to your Policy Account after we deduct any applicable premium expense charges.  We make a monthly deduction from the Policy Account to pay the cost of insurance, the cost of any additional benefit riders and certain monthly charges."

[3] With respect to policy termination, the contract says that "this policy will terminate . . . by the end of the [61-day] grace period" if, on the policy's monthly anniversary, "the Cash Value of this policy is less than the monthly deduction for the policy month then starting."

make the contract's funding requirement susceptible to more than one reasonable interpretation. Regardless of whether Anton made premium payments quarterly or annually, he had to ensure that he put enough money in his policy account to cover the insurance and policy's monthly charges. No one disputes that he failed to do that, so Phoenix properly terminated his policy after the grace period ended. The district court did not err in granting summary judgment to Phoenix.

**AFFIRMED.**