405 So.2d 1013 (1981)
FLORIDA FARM BUREAU MUTUAL INSURANCE COMPANY, Appellant,
v.
James M. GASKINS, D/B/a Osteen & Gaskins Chemical Supplies, Appellee.
No. AB-296.
District Court of Appeal of Florida, First District.
October 16, 1981.
Rehearing Denied December 4, 1981.
Barry D. Graves, of Ritch & Graves, P.A., Gainesville, for appellant.
W.C. O'Neal, of Chandler, O'Neal, Gray, Lang & Haswell, Gainesville, for appellee.
SHIVERS, Judge.
Insurer appeals from a final declaratory judgment finding that a general comprehensive liability insurance policy provided coverage for damages resulting from the insured's delivery of the wrong product to a customer. We affirm.
Appellant Florida Farm Bureau Mutual Insurance Company issued a general liability policy to Appellee James Gaskins, who was doing business as Osteen & Gaskins Chemical Supplies, a chemical supply retail distributor. On May 10, 1979, Eugene Clark, one of Gaskins' customers, sent an employee to appellee's store to obtain an insecticide to be applied to his tobacco crop. The chemical delivered to Clark's employee was not the requested insecticide. Instead, a herbicide with a similar name was delivered. Clark applied the herbicide to his tobacco crop which subsequently destroyed the entire crop. Clark then demanded damages from appellee and the parties settled the claim. In turn, appellee sought indemnity *1014 from appellant, claiming liability for the misdelivery of the herbicide and the resulting crop damage was covered under the general terms of the policy.
Appellant sought a declaratory judgment as to whether the policy provided coverage for the misdelivery of the herbicide, maintaining there was no coverage under the policy because the accident fell under the policy's "products hazards" and "completed operations" exclusions. These coverages were available at an additional premium but were not purchased by appellee. By the general liability terms of the policy issued to appellee, appellant agreed in the policy to pay:
... on behalf of the insured all sums, except punitive damages, unless required to be included by law, which the insured shall become legally obligated to pay as damages because of (1) physical injury to or destruction of tangible property which occurs during the policy period, including the loss of use thereof at any time resulting therefrom, or (2) loss of use of tangible property which has not been physically injured or destroyed provided such loss of use is caused by an occurrence during the policy period.
This coverage was limited by the "products hazards" and "completed operations" exclusions. The policy defined "product hazard" as:
... the handling or use of, the existence of any condition in or a warranty of goods or products manufactured, sold, handled or distributed by the named insured, if the accident occurs after the insured has relinquished possession thereof to others and away from the premises owned, rented or controlled by the insured.
The policy defined "completed operations" as:
... operations, if the accident occurs after such operations have been completed or abandoned at the place of occurrence thereof and away from the premises owned, rented or controlled by the insured.
Since the accident occurred after appellee had relinquished possession of the herbicide and the damage occurred off the premises, appellant argued there was no coverage based upon the exclusions. Appellee argued that the tort occurred on the premises when the sale and misdelivery of the product was made to its customer.
The trial court found there was coverage under the general liability terms of the policy because the negligent act occurred on the premises when appellee sold the herbicide rather than the requested insecticide to Clark, despite the fact that the final result of appellee's negligence occurred when Clark applied the herbicide to his tobacco crop.
This appeal poses the question of whether appellee's liability arose out of products sold and/or after it had completed operations away from the store premises as defined in the policy's products hazards and completed operations exclusions. In construing an insurance policy for the purposes of determining coverage, the policy must be considered in its entirety and clear and unambiguous language should be accorded its natural meaning. Miller Electric Company v. Employers Liability Assurance Corporation, 171 So.2d 40 (Fla. 1st DCA 1965). Here, the definition of products hazards and completed operations as contained in the policy are sufficiently clear and unambiguous. If liability arose out of products manufactured, sold, handled or distributed by appellee, if the accident giving rise to liability occurred after possession of the goods had been relinquished, and if the accident occurred away from appellee's premises, then the policy's exclusions deny coverage. However, we conclude that the exclusions are not applicable under these facts because liability arose out of appellee's on-premise negligence in delivering the wrong product to Clark and not out of the product delivered.
The policy states that it does not apply to products hazards and completed operations. Appellee's liability did not arise out of products or after it completed operations. After Clark ordered the insecticide, appellee's employee failed to notice that the herbicide which was delivered did not conform to what was ordered. It should be clear that appellee's liability would not be within the *1015 products hazard exclusion because it did not arise out of products. The herbicide which was delivered was not the cause of the damage. The herbicide was merely the incidental instrumentality through which the damage was done. The proximate cause of the damage was appellee's negligence in delivering the wrong product to Clark and appellee's liability arose out of the accident which occurred at the time of the negligent misdelivery. Moreover, since the negligence giving rise to appellee's liability occurred at the time of the misdelivery and sale, it is also clear that liability occurred prior to appellee's completion of operations and on the store premises despite the fact that the final result of appellee's negligence occurred elsewhere.
Therefore, the trial court was correct in finding that appellee's loss was covered under the general liability policy issued by appellant to appellee. Appellee's request for an attorney's fee award for his counsel's appellate services is granted and the case is remanded for determination of the amount. Stonewall Ins. Co. v. Gay Mechanical Contractors, Inc., 351 So.2d 403 (Fla. 1st DCA 1977).
AFFIRMED.
McCORD, J., and ERNEST E. MASON (Circuit Judge, Retired), Associate Judge, concur.