552 So.2d 1110 (1989)
ASSOCIATED ELECTRIC AND GAS INSURANCE SERVICES, LTD., Appellant,
v.
HOUSTON OIL AND GAS COMPANY, National Propane Corporation (Conservative Gas Company), Southeast Propane Gas Company (Public Gas Company), Southeast Gas Company and Ranger Insurance Company, Appellees.
No. 87-1039.
District Court of Appeal of Florida, Third District.
September 5, 1989.
Rehearing Denied December 13, 1989.
Jack E. Thompson, Miami, for appellant.
Beth Tyler Vogelsang, for appellees.
Before BASKIN, FERGUSON and JORGENSON, JJ.
BASKIN, Judge.
Associated Electric & Gas Insurance Services, Ltd., [AEGIS] appeals a final declaratory judgment in favor of Ranger Insurance Company [Ranger]. In the judgment, the trial court determined that Ranger, the primary insurance carrier of Houston Oil & Gas Company [Houston], exhausted its insurance policy coverage and that AEGIS, Houston's excess carrier, was liable to Houston for the remaining $163,044.39 obligation resulting from negligent acts of Houston's subsidiary, National Propane Corporation (also known as Conservative Gas Company) [Conservative], the insured. AEGIS disagrees with the trial court and maintains that Ranger did not exhaust its coverage. To resolve the issue, we must decide whether the injuries in question were caused by negligence on the premises of Conservative and therefore covered under general liability limits of $500,000 per occurrence or, instead, resulted from a "product hazard," or a "completed operations hazard," away from the premises, and are compensable under the products and completed operations $500,000 aggregate limits, as the trial court found. We affirm.
Ranger had issued a general liability insurance policy to Conservative. The policy provided $500,000 general liability coverage per occurrence for bodily injury and property damage and $500,000 aggregate coverage for bodily injury and property damage within its "products liability" and "completed operations" provisions. The record discloses that Conservative filled several cylinders with propane gas for James P. Washington and loaded them into his van. *1111 A short time later, while Washington was driving down the street, he slammed on his brakes to avoid hitting another vehicle. He heard a hissing sound coming from a fallen tank and flames enveloped the van. The heated propane in the tanks exploded. A volunteer fireman was killed, and Washington and another person were injured.
Various injured parties sued Conservative and, on some counts, Washington, for injuries they sustained as a result of Conservative's allegedly negligent conduct. The gravamen of the consolidated actions was that Conservative acted negligently in filling compressed propane gas tanks it sold to Washington, and that either Conservative or Washington failed to secure and brace the cylinders before loading them onto Washington's van; other acts of negligence included failing to inspect and test a leaking propane gas cylinder; loading propane gas cylinders into an unsuitable enclosed vehicle; using cylinders which had not been properly retested and recertified; and using a cylinder which had a defective relief valve.[1] At the conclusion of that trial, the jury returned a general verdict apportioning most of the negligence to Conservative. The court entered judgment in accordance with the jury's verdict.
This appeal concerns the subsequent declaratory action between the insurers, in which the trial court construed Ranger's policy. In construing an insurance policy for the purpose of determining coverage, courts must consider the policy in its entirety, and accord clear and unambiguous language its natural meaning. Miller Elec. Co. v. Employers' Liab. Assurance Corp., 171 So.2d 40 (Fla. 1st DCA 1965).
The completed operations hazard or products hazard exclusion is commonly referred to as the products liability exclusion and understood to apply to specialized circumstances of loss caused by the use of goods or products manufactured or produced. The terms goods or products manufactured, sold, handled or distributed in the clause defining the insured's products, when read together, imply goods which are processed or assembled in the ordinary channels of commerce. Further, the products hazard exclusion does not apply where the insured's business primarily involves a service.
Prosser Comm'n Co. v. Guaranty Nat'l Ins. Co., 40 Wash. App. 819, 823, 700 P.2d 1188, 1191 (1985) (citations omitted). See Tucker Constr. Co. v. Michigan Mut. Ins. Co., 423 So.2d 525 (Fla. 5th DCA 1982). See also 7A J. Appleman, Insurance Law and Practice § 4508.03 (1970); 12 G. Couch, Cyclopedia of Insurance Law §§ 44A:1-:60 (1981); Annotation, Construction and Application of Clause Excluding from Coverage of Liability Policy "Completed Operations Hazards," 58 A.L.R.3d 12 (1974). According to the policy:
"Completed operations hazard" includes bodily injury and property damage arising out of operations or reliance upon a representation or warranty made at any time with respect thereto, but only if the bodily injury or property damage occurs after such operations have been completed or abandoned and occurs away from premises owned by or rented to the named insured. "Operations" include materials, parts or equipment furnished in connection therewith. Operations shall be deemed completed at the earliest of the following times:
(1) when all operations to be performed by or on behalf of the named insured under the contract have been completed,
(2) when all operations to be performed by or on behalf of the named insured at the site of the operations have been completed, or
(3) when the portion of the work out of which the injury or damage arises has been put to its intended use by any person or organization other than another contractor or subcontractor engaged in performing operations for a principal as a part of the same project.
Operations which may require further service or maintenance work, or correction, *1112 repair or replacement because of any defect or deficiency, but which are otherwise complete, shall be deemed completed.
.....
"Products hazard" includes bodily injury and property damage arising out of the named insured's products or reliance upon a representation or warranty made at any time with respect thereto, but only if the bodily injury or property damage occurs away from the premises owned by or rented to the name insured and after physical possession of such products has been relinquished to others.
Relying on Florida Farm Bureau Mut. Ins. Co. v. Gaskins, 405 So.2d 1013 (Fla. 1st DCA 1981), AEGIS contends that the injuries resulted solely from negligent conduct and involved neither a products hazard nor a completed operations hazard so that the completed operations provisions do not apply. Furthermore, AEGIS argues that Conservative's negligence occurred on its premises, prior to the completion of the operations, and continued until the time of the accident. If AEGIS is correct, Ranger has not exhausted its limits and AEGIS is not liable. We disagree.
In Gaskins, the insurer sought a declaratory judgment to determine whether a general liability policy with a completed operations provision provided coverage for delivery of the wrong herbicide and ensuing crop damage. The court held that the clause was not applicable because "[t]he herbicide which was delivered was not the cause of the damage. The herbicide was merely the incidental instrumentality through which the damage was done. The proximate cause of the damage was [the insured's] negligence in delivering the wrong product to [the buyer] and [the insured's] liability arose out of the accident which occurred at the time of the negligent misdelivery." Gaskins, 405 So.2d at 1015.
Gaskins does not govern the circumstances of the case before us. Here, the plaintiffs in the original action alleged that Conservative's negligence occurred when it sold compressed propane gas tanks, including one cylinder with a defective relief valve. The completed operations clause applies to "materials, parts or equipment furnished in connection [with the operation]." Although the evidence concerning ownership of the containers was disputed, it was sufficient to support the jury's apparent conclusion that Conservative supplied the defective tank. A defective tank is clearly a product under the policy.
Furthermore, AEGIS receives no benefit from Gaskins because the Washington litigation, unlike the Gaskins lawsuit, does not involve a service which is severable from the product. The Gaskins court found that the product sold (the wrong herbicide) "was merely the incidental instrumentality through which the damage was done," Gaskins, 405 So.2d at 1015, and that the negligence in that case arose from a service wholly unrelated to the product. Here, the negligent inspection of the cylinder prior to the sale of the propane gas is inextricably connected to the sale of the gas. As the court stated in Aetna Casualty & Sur. Co. v. Richmond, 76 Cal. App.3d 645, 655, 143 Cal. Rptr. 75, 81 (1977) (quoting Cravens, Dargan & Co. v. Pacific Indem. Co., Inc., 29 Cal. App.3d 594, 601, 105 Cal. Rptr. 607, 612 (1972)), "[o]nly where negligent service of the insured constitutes `an act sufficiently removed from the quality of the product in question [will it] escape the exclusionary clause.'"
In Richmond, the court determined that the service of adjusting the bindings on skis sold by a sporting goods store was not sufficiently removed from the product to negate the policy's products liability exclusionary clause because the defective service made the skis defective. According to that rationale, the service of inspecting gas cylinders for leaks is a concomitant of the sale of the gas. See Pan Am. Ins. Co. v. White, 321 S.W.2d 337 (Tex. Ct. App. 1959) (where insured placed gas in a defective butane system and failed to check the system prior to filling the tank, service was within completed operations exception). See also Nixon v. United States Fidelity & Guar. Co., 290 So.2d 26 (Fla. 1973) (products-completed operation hazard did not operate *1113 to deny coverage to general contractor who provided a service and was not a manufacturer or seller of goods when brick wall injured child); Western World Ins. Co. v. Siegle, 518 So.2d 989 (Fla. 4th DCA 1988) (insured's repair and service of a pressure cooker constituted an "operation" within the "completed operations hazard" section of liability insurance policy); Miller Elec. (where electrical contractor completed work, products-hazard exclusion does not operate to limit general liability coverage).
Well established principles govern here:
[T]he decision of the trial court in a declaratory judgment is accorded a presumption of correctness and the trial judge's "resolution of an issue ... should not be rejected on appeal unless based on a misapplication of law or shown by the record to be clearly wrong, against the manifest weight of evidence, or not supported by competent substantial evidence."
General Ins. Co. v. Ramanovski, 443 So.2d 302, 304 (Fla. 3d DCA 1983) (quoting Groover v. Adiv Holding Co., 202 So.2d 103, 104-105 (Fla. 3d DCA 1967)). The presumption of correctness is amply supported.
Accordingly, we approve the trial court's ruling that the injuries resulted from completed operations, and that the bodily injury and property damage occurred away from the premises of the insured as defined in the "completed operations" sections of the Ranger policy. Under these circumstances, Ranger has exhausted its coverage, and the AEGIS policy takes effect. We affirm the final judgment.
Affirmed.
NOTES
[1] These allegations appear in the "Charge of the Court" in the Washington trial. Appellant did not include the pleadings in that case in this record.