[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED

U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
April 29, 2004
THOMAS  K. KAHN
CLERK

_____

No. 03-14720

_____

D. C. Docket No. 01-02236-CV-AJ

TAURUS HOLDINGS, INC.,
TAURUS INTERNATIONAL MANUFACTURING, INC.,

Plaintiffs-Appellants,

versus

UNITED STATES FIDELITY AND GUARANTY COMPANY,
PACIFIC INSURANCE COMPANY, LIMITED,
FEDERAL INSURANCE COMPANY,
GREAT NORTHERN INSURANCE COMPANY,
UNITED NATIONAL INSURANCE COMPANY,
FIREMAN'S FUND INS.,

Defendants-Appellees,

NAUTILUS INSURANCE COMPANY,

Defendant.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

**(April 29, 2004)**

Before ANDERSON, CARNES and FAY, Circuit Judges.

PER CURIAM:

Certification from The United States Court of Appeals for the Eleventh Circuit to the Supreme Court of Florida, pursuant to Article V, section 3(b)(6) of the Florida Constitution.

Plaintiffs-Appellants Taurus Holdings, Inc. and Taurus International Manufacturing, Inc. (collectively "Taurus") appeal a final judgment in favor of Defendants-Appellees United States Fidelity and Guaranty Company, Pacific Insurance Company, Limited, Federal Insurance Company, Great Northern Insurance Company, and United National Insurance Company (collectively "Insurance Providers"). Taurus filed suit against Insurance Providers, seeking, among other things, a declaratory judgment that insurance policies issued by Insurance Providers required them to contribute to the defense costs of about 30 lawsuits pending against Taurus. The district court found that the "products-completed operations hazard" provision contained in these insurance policies excluded coverage for defense of these lawsuits and dismissed Taurus' complaint. Because we find that this case turns on an important question of state law for which there is no controlling precedent, we defer our decision pending certification of the question to the Supreme Court of Florida.

2

BACKGROUND

Taurus is in the business of manufacturing, selling, and distributing firearms. Government municipalities have sued Taurus and other handgun manufacturers seeking compensation for expenses allegedly incurred as a result of gun violence in their communities. These suits allege, among other things, negligence, negligent supervision, negligent marketing, negligent distribution, negligent advertising, negligent entrustment, public and private nuisance, failure to warn, false advertising, and unfair and deceptive trade practices. As a result of Taurus' actions, the municipalities claim they have spent substantial sums of money toward police operations, emergency medical costs, and legal prosecutions relating to gun violence and crimes committed involving handguns. Although most of these lawsuits seek compensatory damages, some request only equitable relief. When Taurus initiated this suit against Insurance Providers, Taurus had already notified them of about 30 such lawsuits pending against it.

Insurance Providers issued commercial general liability insurance policies to Taurus between the years 1991 and 1999. Under these policies, Insurance Providers have the duty to defend Taurus against lawsuits seeking damages for bodily injury, property damage, advertising injury, or personal injury. These policies, however, do not afford coverage for damages included within the

"products-completed operations hazard" provision. The Federal Insurance

Company policy[1] defines a products-completed operations hazard as follows:

> [A]ll **bodily injury** and **property damage** occurring
> away from premises you own or rent and arising out of
> **your product** or **your work** except:
> a.      products that are still in your physical
> possession; or
> b.      work that has not yet been completed or
> abandoned.

The policy then defines "your product" as follows:

> [A]ny goods or products, other than real property,
> manufactured, sold, handled, distributed or disposed of
> by:
> 1.      you;
> 2.      others trading under your name; or
> 3.      a person or organization whose business or assets
> you have acquired.

The question presented in this appeal is whether the products-completed operations

hazard exclusion applies to the lawsuits pending against Taurus. Insurance

Providers argue that the injuries complained of in the underlying suits arose out of

Taurus' products – handguns – and therefore the products-completed operations

hazard provision excludes coverage. Taurus, however, contends that because at

least one claim in each of the underlying suits alleges injuries caused by Taurus'

---

[1]Although the described policy provisions are taken from Defendant Federal Insurance Company's policy, the language of the pertinent provisions are substantially the same for all of the applicable insurance policies at issue in this appeal.

on-premises tortious conduct (i.e. negligent marketing, negligent distribution, failure to warn, false advertising, unfair and deceptive trade practices...), the exclusion does not preclude coverage.

Initially, the district court concluded that because the underlying suits allege that injuries were caused by Taurus' tortious business practices and because the "arising out of" language in the products-completed operations hazard provision was ambiguous under Florida law, the exclusion did not apply. However, in response to Insurance Providers' motion for reconsideration, the district court set aside its initial determination and found that (1) the products-completed operations hazard exclusion was not ambiguous and (2) the injuries alleged in the lawsuits against Taurus arose out of Taurus' handguns and not out of its on-premises negligence. Accordingly, the district court concluded that the plain language of the products-completed operations hazard exclusion did not afford coverage for the lawsuits against Taurus and dismissed the complaint. This appeal followed.

DISCUSSION

In reaching its decision, the district court relied on *Koikos v. Travelers Ins. Co.*, 849 So. 2d 263 (Fla. 2003), a case recently decided by the Supreme Court of Florida. *Koikos* involved a shooting at a restaurant where two patrons were shot by one gunman. 849 So. 2d at 265. In the underlying suit, the victims alleged that the

5

restaurant owner negligently failed to provide adequate security. *Id.* The restaurant owner then sued the insurance company, claiming the two shootings constituted two occurrences under the applicable insurance policy. *Id.* The insurance company, however, contended that there was only a single occurrence – the failure to provide adequate security. *Id.* The Supreme Court of Florida, applying the "cause theory," discussed the following:

> It is the act that causes the damage, which is neither expected nor intended from the standpoint of the insured, that constitutes the "occurrence." The insured's alleged negligence is not the "occurrence"; the insured's alleged negligence is the basis upon which the insured is being sued by the injured party.

*Id.* at 271. Thus, there were two "occurrences" – the two shootings.

Although *Koikos* is not a case about products-completed operations hazard exclusions, the district court found that the Supreme Court of Florida's discussion on insurance occurrences eliminated any perceived ambiguity in the phrase "arising out of." The district court noted the *Koikos* court found that the shootings, not the alleged negligent failure to provide security, "gave rise to" the injuries in that case. Applying this analysis to the present case, the district court concluded the *Koikos* decision indicated that the Supreme Court of Florida would find the injuries alleged in the lawsuits against Taurus arose out of Taurus' handguns and not out of its on-premises negligence.

6

While the district court did its best to predict how the Supreme Court of Florida would interpret the products-completed operations hazard provision, it is after all only a guess. We must consider that the *Koikos* court was interpreting the "cause theory" as it applies to determining the number of covered occurrences in an insurance policy. And although the underlying issue now before this Court may be analogous, it is certainly not the same; this case is about defining an entirely different insurance provision – the products-completed operations hazard exclusion.

Taurus, on the other hand, contends that *Fla. Farm Bureau Mut. Ins. Co. v. Gaskins*, 405 So. 2d 1013 (Fla. 1st DCA 1981) is controlling here. *Gaskins* is a Florida First District Court of Appeal case dealing directly with the products-completed operations hazard provision. In *Gaskins*, a chemical supply distributor, Gaskins, delivered an herbicide instead of the proper insecticide to one of his customers. 405 So. 2d at 1013. The customer, a farmer, used the herbicide on his tobacco crop and the entire crop was destroyed. *Id.* Gaskins sought coverage for the subsequent claim against him from his insurance company. *Id.* at 1013-14. The insurance company argued that the product hazard and completed operations provisions of the applicable insurance policy precluded coverage because the liability arose off-premises and out of Gaskins' product. *Id.* at 1014. The First

District concluded that the exclusions were not applicable because "liability arose out of [Gaskins'] on-premises negligence in delivering the wrong product to [the farmer] and not out of the product delivered." *Id.*

Taurus asserts that *Gaskins* stands for the proposition that products-completed operations hazard exclusions apply only to claims of injury from defective products. However, while the cases Taurus relies upon do indicate that defective products are contemplated by these provisions, no case Taurus cites to makes the assertion that the products-completed operations hazard exclusion is limited in application to defective products. *See Fla. Farm Bureau Mut. Ins. Co. v. James*, 608 So. 2d 931 (Fla. 4th DCA 1992); *Associated Elec. & Gas Ins. Servs., Ltd. v. Houston Oil & Gas Co.*, 552 So. 2d 1110 (Fla. 3d DCA 1989); *Gaskins*, 405 So. 2d at 1014. In fact, these cases seem to discuss *Gaskins* within the confines of its specific facts – that the products-completed operations hazard exclusion does not apply to the negligent delivery of the wrong product. *See James*, 608 So. 2d at 932 (noting the insurance company's liability in *Gaskins* arose out of the negligent delivery of the wrong product); *Associated Elec. & Gas Ins. Servs., Ltd.*, 552 So. 2d at 1112 (noting the negligence in *Gaskins* arose from a **service** wholly unrelated to the product).

CONCLUSION

In our view, neither the *Koikos* nor *Gaskins* decisions compel a particular decision as to whether the products-completed operations hazard exclusion applies to the lawsuits pending against Taurus. We recognize there is a significant amount of litigation in this area that affects the substantial rights of both individuals and corporations. This is an area entirely controlled by state law and so it is only proper to allow Florida's highest court decide the issue. Accordingly, we certify the following question to the Supreme Court of Florida:

> DOES A "PRODUCTS-COMPLETED OPERATIONS
> HAZARD" EXCLUSION IN A COMMERCIAL
> GENERAL LIABILITY POLICY OF INSURANCE
> BAR COVERAGE AND THEREFORE ELIMINATE
> AN INSURER'S DUTY TO DEFEND THE INSURED
> GUN MANUFACTURER IN SUITS ALLEGING
> NEGLIGENCE, NEGLIGENT SUPERVISION,
> NEGLIGENT MARKETING, NEGLIGENT
> DISTRIBUTION, NEGLIGENT ADVERTISING,
> NEGLIGENT ENTRUSTMENT, PUBLIC AND
> PRIVATE NUISANCE, FAILURE TO WARN, FALSE
> ADVERTISING, AND UNFAIR AND DECEPTIVE
> TRADE PRACTICES BASED ON THE INSURED'S
> ON-PREMISES BUSINESS PRACTICES.

The phrasing of this question is not intended to limit the Supreme Court of Florida's consideration of the issues involved or the manner in which it gives its answer. The record in this case, as well as copies of the parties' briefs shall be transmitted to the Supreme Court of Florida to assist the court in answering this

9

question.

**QUESTION CERTIFIED.**