913 So.2d 528 (2005)
TAURUS HOLDINGS, INC., et al., Petitioners,
v.
UNITED STATES FIDELITY AND GUARANTY COMPANY, et al., Respondents.
No. SC04-771.
Supreme Court of Florida.
September 22, 2005.
*529 John W. Harbin and Simon H. Bloom of Powell Goldstein, LLP, Atlanta, GA, June Galkoski Hoffman and Christopher E. Knight of Fowler White Burnett, P.A., Miami, FL, for Appellant(s).
*530 Jonathan A. Constine, Douglas S. Crosno and Lori Piechura of Hogan and Hartson, LLP, Washington, DC, Charles M.P. George of George, Hartz, Lundeen, et al., Coral Gables, FL, Thomas J. Morgan, Coconut Grove, FL, Walter J. Andrews, Michael S. Levine and Amy K. Savage of Shaw Pittman, LLP, McLean, VA, and Alyssa M. Campbell of Williams Montgomery and John, LTD., Chicago, IL, for Appellee(s).
William Scott Patterson of Jiranek, Jennings and Patterson, LLP, Baltimore, MD on behalf of United Policyholders; Ronald L. Kammer and Andrew E. Grigsby of Hinshaw and Culbertson, Miami, FL, Laura A. Foggan and John C. Yang of Wiley Rein and Fielding, LLP, Washington, DC on behalf of Complex Insurance Claims Litigation Association, for Amici Curiae.
CANTERO, J.
In this case we must decide whether commercial liability insurance policies exclude coverage for lawsuits that several municipalities have filed against a gun manufacturer. The municipalities seek to recover the cost of medical and other services incurred as a result of gun violence in their communities. The issue is whether the damages "arise out of" the use of guns, and are thus excluded from coverage under the policies' products-completed operations hazard exclusions. As we explain below, we hold that the broad language in the policies excluding from coverage "all bodily injury and property damage occurring away from premises you own or rent and arising out of your product" excludes coverage for these lawsuits.

I. FACTS
Petitioners Taurus Holdings, Inc. and Taurus International Manufacturing, Inc. ("Taurus") manufacture, distribute, and sell firearms. Along with other handgun manufacturers, distributors, and retailers, Taurus faces lawsuits from a number of municipalities around the nation seeking compensation for expenses incurred as a result of gun violence in their communities. The complaints allege several types of misconduct: that the gun manufacturers failed to make guns safe and prevent foreseeable misuse, and failed to provide appropriate warnings about the dangers of guns; that they designed, manufactured and marketed guns in excess of the demand that might be expected from legitimate consumers, thereby guaranteeing that the surplus would enter the illegal firearms market, and that they were aware that the guns they manufactured and sold would fall into the hands of criminals, but took no action to prevent it; and that they falsely and deceptively claimed through advertising and promotion of their handguns that the ownership and possession of handguns in the home increases one's security. Among other causes of action, the suits allege "negligence, negligent supervision, negligent marketing, negligent distribution, negligent advertising, negligent entrustment, public and private nuisance, failure to warn, false advertising, and unfair and deceptive trade practices." Taurus Holdings, Inc. v. U.S. Fid. & Guar. Co., 367 F.3d 1252, 1252-53 (11th Cir.2004). The municipalities seek compensation for expenses they have incurred for, among other things, police protection, hospital costs, emergency medical services, and prosecution of violent crimes involving the use of handguns.
During the period in question, several different carriersrespondents United States Fidelity and Guaranty Company, Pacific Insurance Company, Ltd., Federal Insurance Company, Great Northern Insurance Company, and United National Insurance Company ("Insurers")issued commercial general liability insurance policies *531 to Taurus. Among other things, these policies require the Insurers to defend Taurus in "lawsuits seeking damages for bodily injury, property damage, advertising injury, or personal injury." Id. at 1253. The policies all contain exclusions, however, for "products-completed operations hazards." Federal Insurance Company's policy language is representative of the others. It excludes coverage for:

[A]ll bodily injury and property damage occurring away from premises you own or rent and arising out of your product or your work except:
a. products that are still in your physical possession; or
b. work that has not yet been completed or abandoned.
The policy defines "your product" as follows:
[A]ny goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:
1. you;
2. others trading under your name; or
3. a person or organization whose business or assets you have acquired.
Id. at 1253. Taurus sought coverage from the Insurers for the defense of the lawsuits and indemnity for any ultimate damages for which it would be liable. Among other defenses not at issue here, the Insurers asserted that the products-completed operations hazard exclusion applied.[1]
The federal district court initially agreed with Taurus, concluding that the underlying suits alleged damages caused by tortious business practices. See id. The court found the phrase "arising out of" in the exclusion ambiguous. See id. Upon motion for reconsideration, however, the district court held that "(1) the products-completed operations hazard exclusion was not ambiguous and (2) the injuries alleged in the lawsuits against Taurus arose out of Taurus's handguns and not out of its on-premises negligence." Id. Taurus appealed to the Eleventh Circuit. That court certified the following question of Florida law as determinative of a cause pending in that court and for which there appears to be no controlling precedent:
DOES A "PRODUCTS-COMPLETED OPERATIONS HAZARD" EXCLUSION IN A COMMERCIAL GENERAL LIABILITY POLICY OF INSURANCE BAR COVERAGE AND THEREFORE ELIMINATE AN INSURER'S DUTY TO DEFEND THE INSURED GUN MANUFACTURER IN SUITS ALLEGING NEGLIGENCE, NEGLIGENT SUPERVISION, NEGLIGENT MARKETING, NEGLIGENT DISTRIBUTION, NEGLIGENT ADVERTISING, NEGLIGENT ENTRUSTMENT, PUBLIC AND PRIVATE NUISANCE, FAILURE TO WARN, FALSE ADVERTISING, AND UNFAIR AND DECEPTIVE TRADE PRACTICES BASED ON THE INSURED'S ON-PREMISES BUSINESS PRACTICES.
Id. at 1255. We have jurisdiction to answer the certified question. See art. V, § 3(b)(6), Fla. Const. For the reasons discussed below, we answer it in the affirmative.

II. DISCUSSION
In addressing the issue, we first reiterate the standard in Florida for interpreting *532 insurance contracts. We then analyze cases, first from Florida and then from other states, interpreting the clause "arising out of" in the context of insurance policies. We review various state court decisions considering whether products-completed operations hazard exclusions apply only to defective products or more broadly to all products. We then consider three recent federal cases that have considered similar exclusions as applied to nearly identical claims against gun manufacturers. Finally, we conclude from this analysis that the phrase "arising out of" is not ambiguous, and that the policies exclude coverage for the conduct alleged in the complaints.

A. Standards for Interpreting Insurance Contract Language in Florida
Under Florida law, insurance contracts are construed according to their plain meaning. Ambiguities are construed against the insurer and in favor of coverage. As we recently said:
[W]e must follow the guiding principle that this Court has consistently applied that insurance contracts must be construed in accordance with the plain language of the policy. Further, we consider that "[i]f the relevant policy language is susceptible to more than one reasonable interpretation, one providing coverage and the [other] limiting coverage, the insurance policy is considered ambiguous." An ambiguous provision is construed in favor of the insured and strictly against the drafter.
Swire Pac. Holdings, Inc. v. Zurich Ins. Co., 845 So.2d 161, 165 (Fla.2003) (citations omitted) (quoting Auto-Owners Ins. Co. v. Anderson, 756 So.2d 29, 34 (Fla.2000)); see also Deni Assocs. of Fla., Inc. v. State Farm Fire & Cas. Ins. Co., 711 So.2d 1135, 1140 (Fla.1998) (noting that "in Florida ambiguities are construed against the insurer").
Although ambiguous provisions are construed in favor of coverage, to allow for such a construction the provision must actually be ambiguous. In State Farm Mutual Automobile Insurance Co. v. Pridgen, 498 So.2d 1245, 1248 (Fla.1986), we emphasized that insurance contracts are interpreted according to the plain language of the policy except "when a genuine inconsistency, uncertainty, or ambiguity in meaning remains after resort to the ordinary rules of construction." Id. at 1248 (quoting Excelsior Ins. Co. v. Pomona Park Bar & Package Store, 369 So.2d 938, 942 (Fla.1979)). We further held that courts may not "rewrite contracts, add meaning that is not present, or otherwise reach results contrary to the intentions of the parties." Id. (quoting Excelsior, 369 So.2d at 942). Moreover, "if a policy provision is clear and unambiguous, it should be enforced according to its terms whether it is a basic policy provision or an exclusionary provision." Hagen v. Aetna Cas. & Sur. Co., 675 So.2d 963, 965 (Fla. 5th DCA 1996).

B. Florida Court Interpretations of "Arising Out of"
The specific language Taurus claims is ambiguous are the words "arising out of" in the phrase "all bodily injury and property damage occurring away from premises you own or rent and arising out of your product." Taurus, 367 F.3d at 1253 (emphasis added). Florida courts have held similar language not to be ambiguous. In Hagen, 675 So.2d at 963, the Fifth District Court of Appeal held that the term "arising out of" was unambiguous and "is broader in meaning than the term `caused by' and means `originating from,' `having its origin in,' `growing out of,' `flowing from,' `incident to' or `having a connection *533 with.'" Id. at 965 (citing Nat'l Indem. Co. v. Corbo, 248 So.2d 238 (Fla. 3d DCA 1971)); see also Allstate Ins. Co. v. Safer, 317 F.Supp.2d 1345, 1350 n. 4, 1354 (M.D.Fla.2004) (finding that the phrase "arising out of" in an exclusionary clause was not ambiguous); Ohio Cas. Ins. Co. v. Cont'l Cas. Co., 279 F.Supp.2d 1281, 1284 (S.D.Fla.2003) ("[T]he language `arising out of' is not ambiguous. . . . `Arising out of' are words of much broader significance then [sic] `caused by.'") (quoting Corbo, 248 So.2d at 240); Am. Sur. & Cas. Co. v. Lake Jackson Pizza, Inc., 788 So.2d 1096, 1099 (Fla. 1st DCA 2001) (noting that "the term `arising out of' is not ambiguous").
One Florida case, however, has found the "arising out of" language ambiguous. In Westmoreland v. Lumbermens Mutual Casualty Co., 704 So.2d 176 (Fla. 4th DCA 1997), the Fourth District interpreted a policy that excluded claims for "`bodily injury' . . . arising out of the ownership, maintenance, use, loading or unloading of motor vehicles." Id. at 178. The court noted that the term "arising out of" was not defined and stated that "[w]here a critical term is not defined in an exclusionary clause of the policy, it will be liberally construed in favor of an insured." Id. at 180. The court found the policy ambiguous and defined "arising out of" to require a showing of proximate causation. The Fourth District has since clarified, however, that the ambiguity found in the Westmoreland policy was a product of the "arising out of" language combined with other policy language. See Estate of Bombolis v. Cont'l Cas. Co., 740 So.2d 1229, 1230 (Fla. 4th DCA 1999). As clarified, therefore, Westmoreland does not hold that the "arising out of" language, standing alone, is ambiguous.[2]
We, too, have interpreted the phrase "arising out of," although we interpreted an insuring clause rather than an exclusion. In Race v. Nationwide Mutual Fire Insurance Co., 542 So.2d 347 (Fla.1989), the issue was whether uninsured motorist coverage covered injuries arising from a physical altercation that occurred just after an accident. Id. at 348. In analyzing the issue, we stated that "the phrase `arising out of' does not have the same meaning as `proximately caused by,' and that the language of the policy should be liberally construed to effect broad coverage." Id. However, we found no coverage even under an expansive reading of "arising out of": "The most that can be said is that the driving of the uninsured motorist which caused the accident created an atmosphere of hostility between the parties. It had nothing to do with [the underlying plaintiff's] injuries, which only came about several minutes later. . . ." Id. at 351. We did not decide whether the term "arising out of" was ambiguous.
While Race stands for the proposition that "arising out of" does not equate to proximate causeat least in coverage provisionsit does require some level of causation greater than coincidence. See also Gov't Employees Ins. Co. v. Novak, 453 So.2d 1116, 1119 (Fla.1984) ("`[A]rising out of' [in the context of automobile coverage] does not mean `proximately caused by,' but has a much broader meaning. All that is required is some nexus between the motor vehicle and the injury."); Hernandez v. Protective Cas. Ins. Co., 473 So.2d 1241, 1242 (Fla.1985) (same); Heritage *534 Mut. Ins. Co. v. State Farm Mut. Auto. Ins. Co., 657 So.2d 925, 927 (Fla. 1st DCA 1995) (citing Race and finding coverage for injuries sustained by a child due to horseplay with other children in the back of the insured's van, but warning that some causal connection is necessary between the injury and the vehicle and that "[i]t is not sufficient that the vehicle was merely the situs of the injuries").
The Insurers rely heavily on our decision in Koikos v. Travelers Insurance Co., 849 So.2d 263 (Fla.2003), which they argue broadly interpreted the phrase "arising out of." In reaching its decision after reconsideration in this case, the federal district court also relied on Koikos. In that case, two individuals were shot in a restaurant. The victims sued the owner for negligence. The policy covered "bodily injury or property damage arising out of any one occurrence." Id. at 266. The policy defined "occurrence" as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." It did not define "accident." Id. The Eleventh Circuit certified a question, which we rephrased as follows:
When the insured is sued based on negligent failure to provide adequate security arising from separate shootings of multiple victims, are there multiple occurrences under the terms of an insurance policy that defines occurrence as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions"?
Id. at 264. We answered the question in the affirmative, holding that the "policy's definition of occurrence as applied to the facts of this case is susceptible to more than one reasonable interpretation." Id. at 273. Because the term "occurrence" was ambiguous, we construed it in the insured's favor. Id. We held that the injuries arose from the shooting and not from the insured's negligence.
The Insurers argue that our interpretation of "arising out of any one occurrence" in Koikos should control our interpretation of the language "arising out of" in Taurus's policies. We disagree. We did not base our decision in Koikos on a construction of "arising out of" but rather on the definition of "occurrence" as an accident. Id. at 269. We found that term "susceptible to varying interpretations including not only an `accidental event' but also `injuries or damage' that are `neither expected nor intended from the standpoint of the insured.'" Id. (quoting State Farm Fire & Cas. Co. v. CTC Dev. Corp., 720 So.2d 1072, 1076 (Fla.1998)). Therefore, Koikos does not resolve the present issue.
Taurus, on the other hand, relies heavily on the First District's decision in Florida Farm Bureau Mutual Insurance Co. v. Gaskins, 405 So.2d 1013 (Fla. 1st DCA 1981). In Gaskins, the insured, a chemical supply retail distributor, delivered an herbicide to a customer who had ordered an insecticide. 405 So.2d at 1013-14. Thinking it was an insecticide, the customer unwittingly sprayed his tobacco crop with the herbicide. Id. When the customer lost his entire crop, he sued the distributor. Id. The distributor settled the claim and sought indemnity from the insurer. Id. The insurer argued that the claims were excluded under the policy's "products hazards" and "completed operations" exclusions. Id. at 1014. The court phrased the issue as whether the distributor's liability "arose out of the products sold and/or after it had completed operations away from the store premises as defined in the policy's products hazards and completed operations exclusions." Id. The court found the policy language unambiguous and concluded that the exclusions did not apply because liability arose out of the distributor's on-premises negligence in delivering the *535 wrong product to the customer and "not out of the product delivered." Id. The court focused on proximate cause, stating that the herbicide was not the cause of the damage, but "merely the incidental instrumentality through which the damage was done." Id. at 1015.
Taurus argues that under Gaskins, coverage is not excluded in this case because the claims against Taurus allege, among other things, "negligence, negligent supervision, negligent marketing, negligent distribution, negligent advertising, negligent entrustment, public and private nuisance, failure to warn, false advertising, and unfair and deceptive trade practices." Taurus, 367 F.3d at 1252-53. But in interpreting policies, the language is the key. The court in Gaskins does not directly quote the policy language. Therefore, we cannot tell whether it interpreted the same language at issue here. Moreover, the circumstances in Gaskins were substantially different from those involved here. The court held that the negligence occurred on the premises, when the employee provided a herbicide instead of an insecticide.[3] Therefore, the court held, the damages did not arise from the product, but from the distributor's on-premises negligence.
We conclude that neither our opinion in Koikos nor the Fourth District's opinion in Gaskins answers the question before us. We therefore analyze how other states have interpreted the phrase "arising out of" in the context of insurance contracts.

C. Other States' Interpretations of "Arising Out of"
Most other jurisdictions interpret the phrase "arising out of" to encompass a meaning broader than mere proximate cause. As one court said:
[T]he general consensus [is] that the phrase "arising out of" should be given a broad reading such as "originating from" or "growing out of" or "flowing from" or "done in connection with"that is, it requires some causal connection to the injuries suffered, but does not require proximate cause in the legal sense.
Fed. Ins. Co. v. Tri-State Ins. Co., 157 F.3d 800, 804 (10th Cir.1998) (citing cases and secondary sources). The "general consensus" referred to in Tri-State is supported by numerous cases from around the country. See Am. States Ins. Co. v. Bailey, 133 F.3d 363, 370 (5th Cir.1998) ("The words ["arising out of"] are `understood to mean "originating from," "having its origin in," "growing out of" or "flowing from."'") (quoting Red Ball Motor Freight, Inc. v. Employers Mut. Liab. Ins. Co., 189 F.2d 374, 378 (5th Cir.1951)); Winnacunnet Coop. Sch. Dist. v. Nat'l Union Fire Ins. Co., 84 F.3d 32, 35 (1st Cir.1996) (applying New Hampshire law and stating that "New Hampshire courts have consistently viewed `arising out of' as a `very broad, general and comprehensive term . . . meaning originating from or growing out of or flowing from.'") (quoting Merrimack Sch. Dist. v. Nat'l Sch. Bus Serv., Inc., 140 N.H. 9, 661 A.2d 1197, 1199 (1995)); State Farm Fire & Cas. Co. v. Erwin, 393 So.2d 996, 998 (Ala.1981) ("The phrase `arising out of' has been broadly construed. . . . `Arising out of' . . . are words of much broader significance than `caused by.'") *536 (quoting Blue Bird Body Co. v. Ryder Truck Rental, Inc., 583 F.2d 717, 726 (5th Cir.1978)); Allstate Ins. Co. v. Smiley, 276 Ill.App.3d 971, 213 Ill.Dec. 698, 659 N.E.2d 1345, 1351 (1995) (finding "arising out of" to be unambiguous and interpreting "the word `arise' [to] mean[ ] `[t]o spring up, originate, to come into being or notice' (Black's Law Dictionary 108 (6th ed.1990)), or `to come into being,' `to come about: come up: take place' (Webster's Third New International Dictionary 117 (1986))"); United Servs. Auto. Ass'n v. Morgan, 23 Kan.App.2d 987, 939 P.2d 959, 964 (1997) (insurance policy containing the phrase "arising out of" "imparts a more liberal concept of a causation than `proximate cause' in its traditional legal sense") (quoting Farm Bureau Mut. Ins. Co. v. Evans, 7 Kan.App.2d 60, 637 P.2d 491, 494 (1981)); Mass Transit Admin. v. CSX Transp., Inc., 349 Md. 299, 708 A.2d 298, 305 (1998) ("The words `arising out of' must be afforded their common understanding, namely, to mean originating from, growing out of, flowing from, or the like.") (quoting N. Assur. Co. of Am. v. EDP Floors, Inc., 311 Md. 217, 533 A.2d 682, 688-89 (1987)); Meadowbrook, Inc. v. Tower Ins. Co., 559 N.W.2d 411, 419 (Minn.1997) ("[T]his court has defined the words `arising out of' in an insurance policy to mean `causally connected with' and not `proximately caused by.'") (quoting Faber v. Roelofs, 311 Minn. 428, 250 N.W.2d 817, 822 (1977)); Farmers Union Coop. Ins. Co. v. Allied Prop. & Cas. Ins. Co., 253 Neb. 177, 569 N.W.2d 436, 439 (1997) ("We have defined the words `arising out of the use' as `very broad, general, and comprehensive, terms [that] are ordinarily understood to mean originating from, growing out of, or flowing from.'") (quoting Dairyland Ins. Co. v. Esterling, 205 Neb. 750, 290 N.W.2d 209, 212 (1980)); Am. Motorists Ins. Co. v. L-C-A Sales Co., 155 N.J. 29, 713 A.2d 1007, 1010 (1998) (citing New Jersey cases that interpret "arising out of" broadly in both insuring and exclusionary clauses); Toll Bridge Auth. v. Aetna Ins. Co., 54 Wash.App. 400, 773 P.2d 906, 908 (1989) ("The phrase `arising out of' is unambiguous and has a broader meaning than `caused by' or `resulted from.' It is ordinarily understood to mean `originating from', `having its origin in', `growing out of', or `flowing from'.") (citations omitted). Insurance treatises employ a similarly broad definition of "arising out of." See 7 Lee R. Russ & Thomas F. Segalla, Couch on Insurance 3d § 101:54 (1997); see also 6B John Allen Appleman & Jean Appleman, Insurance Law and Practice § 4317, at 360-63 (rev. ed.1979) (stating that in an automobile insurance policy the "words `arising out of'. . . are of broader significance than the words `caused by', and are ordinarily understood to mean originating from, incident to, or having connection with the use of the vehicle").[4]
Therefore, the law in most other states is consistent with the broad interpretation of the phrase "arising out of" in Hagen and other Florida cases.

*537 D. Interpretation of the Products-Completed Operations Hazard Exclusion
Despite the broad interpretation of the term "arising out of," Taurus argues that a majority of courts around the country have interpreted products-completed operations hazard exclusions to exclude coverage only for defective products. State courts have arrived at different conclusions on that issue. As Taurus argues, several jurisdictions have limited the exclusions to defective products. See Viger v. Commercial Ins. Co. of Newark, N.J., 707 F.2d 769, 773 (3rd. Cir.1983); Nautilus Ins. Co. v. Don's Guns & Galleries, Inc., No. IP 99-0735-C-Y/G, 2000 WL 34251061 at *4 (S.D.Ind. Jan.26, 2000); Brewer v. Home Ins. Co., 147 Ariz. 427, 710 P.2d 1082, 1084 (Ct.App.1985); Farm Bureau Mut. Ins. Co. of Ark., Inc. v. Lyon, 258 Ark. 802, 528 S.W.2d 932, 937 (1975); Chancler v. Am. Hardware Mut. Ins. Co., 109 Idaho 841, 712 P.2d 542, 546 (1986); Ada Resources, Inc. v. Don Chamblin & Assocs., Inc., 361 So.2d 1339, 1343-44 (La.Ct.App.1978); Cooling v. U.S. Fid. & Guar. Co., 269 So.2d 294, 297 (La.Ct.App.1972); Am. Trailer Serv., Inc. v. Home Ins. Co., 361 N.W.2d 918, 920-21 (Minn.Ct.App.1985); Royal Plastics, Inc. v. State Auto. Mut. Ins. Co., 99 Ohio App.3d 221, 650 N.E.2d 180, 183-84 (1994); Hartford Mut. Ins. Co. v. Moorhead, 396 Pa.Super. 234, 578 A.2d 492, 496 (1990); Gen. Ins. Co. of Am. v. Crawford, 635 S.W.2d 98, 101-02 (Tenn.1982); Colony Ins. Co. v. H.R.K., Inc., 728 S.W.2d 848, 851 (Tex.App.1987). Some of these cases, however, considered policy language different from that at issue here.
Other jurisdictions have held that the exclusion applies more broadly. See Hagen Supply Corp. v. Iowa Nat'l Mut. Ins. Co., 331 F.2d 199, 202-03 (8th Cir.1964); Eon Labs Mfg., Inc. v. Reliance Ins. Co., 756 A.2d 889, 893 (Del.2000); Cobbins v. Gen. Accident Fire & Life Assurance Corp., 53 Ill.2d 285, 290 N.E.2d 873, 876 (1972); Tiano v. Aetna Cas. & Sur. Co., 102 Mich.App. 177, 301 N.W.2d 476, 479 (1981); Fred Steinheider & Sons, Inc. v. Iowa Kemper Ins. Co., 204 Neb. 156, 281 N.W.2d 539, 543 (1979); Pa. Gen. Ins. Co. v. Kielon, 112 A.D.2d 709, 492 N.Y.S.2d 502, 503-04 (N.Y.App.Div.1985).[5]
From our review of these cases, we draw three conclusions: first, most courts have not considered whether products-completed operations hazard exclusions should apply only to defective products; second, those that have are split on the issue; and third, the language of the policy is the most important factor. We do not believe that a fair reading of the exclusion at issue here would apply it only to defective products. Certainly the word "defective" is found nowhere in the exclusion. The language is much broader, applying the exclusion to "all bodily injury and property damage . . . arising out of your product" The term "your product" is defined as "any goods or products . . . manufactured, sold, handled, distributed or disposed of by" Taurus. The word "any" before "goods or products" connotes a scope extending beyond merely defective products. Therefore, nothing in the text of the exclusion suggests it applies only to defective products. As one court has noted, "in order to limit the . . . exclusion provision to defective products, we would need to read into the text a requirement that is simply not there." Brazas Sporting Arms, Inc. v. Am. Empire Surplus Lines Ins. Co., 220 F.3d 1, 6 (1st Cir.2000). But, as we previously have emphasized, *538 "[w]e cannot place limitations upon the plain language of a policy exclusion simply because we may think it should have been written that way." Deni Assocs., 711 So.2d at 1139. The plain language of the exclusion in this case excludes coverage for all product-related injuries, not merely defective products. We render no opinion about policy exclusions with different language.
Taurus nevertheless argues that applying the exclusion to encompass more than defective products may create gaps in insurance coverage, contrary to Florida public policy. See Farrer v. U.S. Fid. & Guar. Co., 809 So.2d 85, 94 (Fla. 4th DCA 2002) (noting that "a comprehensive general liability policy should be construed as leaving no gap in coverage between it and an automobile policy"). Taurus reasons that if an insured wished to obtain total coverage and purchased a comprehensive general liability policy with a standard products hazard exclusion and products hazard coverage, a gap in coverage could result if the products hazard exclusion were read to encompass more than defective products claims. In a situation such as this one, Taurus argues, products liability coverage would not cover the claims made in the underlying litigation because many of them involve claims of negligent distribution and other non-product-related issues.
Contrary to Taurus's argument, interpreting the products hazard exclusion as encompassing more than defective products would not create gaps in coverage. Insurers offer optional products-completed operations hazard coverage. See, e.g., Cobbins v. Gen. Accident Fire & Life Assurance Corp., 53 Ill.2d 285, 290 N.E.2d 873, 877 (1972) (holding that the term "product hazard" in a policy "applies to all product related injuries, including the sale of the wrong product or the wrongful sale of a product to a customer so long as the other requisites also are present"); Abbott v. Meacock, 155 Ariz. 260, 746 P.2d 1, 3 (Ct.App.1987) ("[W]e conclude that products liability coverage would apply not only where the product has been designed or manufactured defectively, but also where the product has been recommended and installed for an improper use."). Taurus's policy, for example, contains an optional products-completed operations hazard coverage that exactly dovetails the exclusion. Essentially, the exclusion and the optional coverage are mirror images, containing the same definition of a products-completed operations hazard. Therefore, the optional coverage covers everything the exclusionary provision excludes. An insured such as Taurus has the option of purchasing such coverage.

E. Gun-Related Litigation in Other Jurisdictions
No Florida court has considered the precise question before us: whether a products-completed operations hazard exclusion excludes coverage for a lawsuit filed by municipalities against a gun manufacturer for costs incurred as a result of gun violence. We also have found no other state court that has decided the issue. Three federal courts, however, recently considered such exclusions in similar circumstances. See Brazas, 220 F.3d at 1; Beretta U.S.A. Corp. v. Fed. Ins. Co., 17 Fed.Appx. 250 (4th Cir.2001) (unpublished); Mass. Bay Ins. Co. v. Bushmaster Firearms, Inc., 324 F.Supp.2d 110 (D.Me.2004). In each case, the court found that the exclusion operated to deny coverage.
In Brazas, the underlying suit charged the gun manufacturer with flooding the market with more guns than it knew would legitimately be purchased, thus creating "an unlawful national market in firearms." 220 F.3d at 3. The policy excluded coverage for "all injuries `arising out of' the insured's products." Id. at 6. The court *539 found two interdependent causes of the plaintiffs' injuries: "Brazas's alleged misconduct is the over-distribution of firearms and the proximate cause of the plaintiffs' injuries are firearms. . . ." Id. at 8. The court concluded that the suits "concern off-premises conduct arising out of (not merely incidentally related to) firearms products," and held that the exclusion applied. Id. at 8-9.
In Beretta, both the policy at issue and the claims asserted were almost identical to those at issue here. The policy excluded coverage for "bodily injury and property damage . . . arising out of your product." 17 Fed.Appx. at 252. The underlying litigation was brought by twelve municipalities and a class of individuals. Id. The complaint asserted claims for "negligent marketing and distribution of guns and public nuisance, and [sought] to recover expenses allegedly incurred in treating and caring for people who have suffered gunshot injuries." Id. The court concluded that, under Maryland law, the phrase "arising out of" in the products hazard exclusion means "but for" causation. Id. at 253. The court then held that coverage did not apply because the alleged injuries arose out of Beretta's products. The court cited with approval the reasoning in Brazas. Id. at 254.
Finally, in Bushmaster, a federal district court faced a similar dispute. The underlying suit was commenced by victims and the families of victims of the infamous sniper shootings in Washington, D.C. in the fall of 2002. They sued Bushmaster and others, claiming that the gun industry "created a `public nuisance'. . . and . . . that they negligently (with gross negligence, recklessness and outrageous indifference) distributed assault weapons, and are liable for negligent entrustment." 324 F.Supp.2d at 111. The court analyzed the case under Maine law, which required it to "examine the allegations of the [complaint] against the coverage and exclusions of the insurance policies, and determine if there is potential coverage." Id. In Maine (as in Florida), if a claim potentially would require indemnity, then the "insurance company has the obligation to defend the claim even though ultimately it may not be required to indemnify." Id. at 112. The court determined that the claims against Bushmaster were excluded under the "products hazard" exclusion to the policy, which excluded "`bodily injury' and `property damage' . . . arising out of `your product.'" Id. at 112. The court relied heavily on Brazas, citing that court's refusal to limit products hazard exclusion to defective products claims. See id. at 113.
Thus, all three courts that have considered the precise issue before us have concluded that the products-completed operations hazard exclusion operates to exclude coverage for claims against a gun manufacturer where the injuries alleged were caused by the guns the defendants had manufactured.

F. "Arising out of" Is Unambiguous and Should Be Interpreted Broadly
Based on the analysis above, we agree with the majority of states and conclude that the phrase "arising out of your product" in the products-completed operations hazard exclusions at issue is unambiguous. "The term `arising out of' is broader in meaning than the term `caused by' and means `originating from,' `having its origin in,' `growing out of,' `flowing from,' `incident to' or `having a connection with.'" Hagen, 675 So.2d at 965. As we implied in Race, 542 So.2d at 351, this requires more than a mere coincidence between the conduct (or, in this case, the product) and the injury. It requires "some causal connection, or relationship." Heritage Mut. Ins. Co., 657 So.2d at 927. *540 But it does not require proximate cause. Race, 542 So.2d at 348.
The provision at issue excludes coverage for "all bodily injury and property damage occurring away from premises you own or rent and arising out of your product." The underlying complaints allege damages for increased health care costs and the increased costs for police and emergency medical services due to gun violence, and the costs associated with the prosecution of gun-related crimes. The allegations in the complaints all "concern off-premises conduct arising out of (not merely incidentally related to) firearms products." Brazas, 220 F.3d at 8. The bodily injuries alleged all originated from Taurus's productsthat is, the discharge of their manufactured guns. Therefore, we hold that the policy excludes coverage.

III. CONCLUSION
We conclude that the products-completed operations hazard exclusion found in the commercial general liability policies Taurus purchased excludes coverage for the claims raised against Taurus in the underlying suits. We therefore answer "yes" to the Eleventh Circuit's certified question. We remand this case to the Eleventh Circuit for further proceedings.
It is so ordered.
PARIENTE, C.J., and WELLS, ANSTEAD, QUINCE, and BELL, JJ., concur.
LEWIS, J., concurs in result only.
NOTES
[1] The Insurers also defended against Taurus's claim on the ground that the underlying complaints do not even allege "bodily injury" under the policies because they seek only reimbursement for economic loss, which the policies do not cover. That issue has not been briefed in this Court, and we do not reach it. We assume for purposes of our discussion that the complaints allege bodily injury that would be covered absent the products-completed operations hazard exclusion.
[2] Other courts applying Florida law disagreed with Westmoreland. See Ohio Cas. Ins. Co., 279 F.Supp.2d at 1286 (specifically disagreeing with Westmoreland and holding that "arising out of" is not vague or ambiguous for being undefined); Lake Jackson Pizza, 788 So.2d at 1099 (declining to follow Westmoreland and determining that "arising out of" is not ambiguous).
[3] We note that several Florida courts have distinguished Gaskins based on the unique facts of that case. See Auto-Owners Ins. Co. v. Marvin Dev. Corp., 805 So.2d 888, 892 (Fla. 2d DCA 2001) (applying a products hazard exclusion to exclude coverage, distinguishing Gaskins); Associated Elec. & Gas Ins. Servs., Ltd. v. Houston Oil & Gas Co., 552 So.2d 1110, 1111 (Fla. 3d DCA 1989) (same); K-C Mfg. Co. v. Shelby Mut. Ins. Co., 434 So.2d 1004, 1006 (Fla. 1st DCA 1983) (same).
[4] We recognize that the law is not unanimous. A minority of jurisdictions have held that the phrase "arising out of" is ambiguous. See Barga v. Ind. Farmers Mut. Ins. Group, Inc., 687 N.E.2d 575, 578 (Ind.Ct.App.1997); Wendell v. State Farm Mut. Auto. Ins. Co., 293 Mont. 140, 974 P.2d 623, 639 (1999); Nat'l Union Fire Ins. Co. v. Caesars Palace Hotel & Casino, 106 Nev. 330, 792 P.2d 1129, 1130 (1990); State Capital Ins. Co. v. Nationwide Mut. Ins. Co., 318 N.C. 534, 350 S.E.2d 66, 74 (1986). Other courts have held the phrase "broad and vague." See Aetna Cas. & Sur. Co. v. Ocean Accident & Guar. Corp., 386 F.2d 413, 415 (3d Cir.1967); Liberty Mut. Ins. Co. v. Westfield Ins. Co., 301 Ill.App.3d 49, 234 Ill.Dec. 578, 703 N.E.2d 439, 442 (1998). State Capital and Barga interpreted exclusionary clauses; the remainder interpreted insuring clauses.
[5] Curiously, both parties cite Minnesota law in support of their positionsTaurus cites American Trailer Service and the Insurers cite Hagen. The Minnesota Supreme Court has not yet ruled on this issue.