**FALCON TRUST GROUP, INC**
a Florida corporation,
Plaintiff.

v.

**TRAVELERS CASUALTY AND SURETY COMPANY OF AMERICA, a Connecticut corporation, Defendant.**

Case No. 09–23486–CIV–UNGARO.

United States District Court,
S.D. Florida.

July 19, 2010.

**1364**

McDonald, John E. Hughes, III, McLuskey & McDonald, Miami, FL, for Plaintiff.

Gary I. Khutorsky, Litchfield Cavo, Ft. Lauderdale, FL, for Defendant.

### ORDER ON MOTIONS FOR SUMMARY JUDGMENT

URSULA UNGARO, District Judge.

THIS CAUSE is before the Court upon Defendant's Motion for Summary Judgment, filed February 1, 2010 (D.E. 10). Plaintiff responded in opposition and cross-motioned for summary judgment on February 26, 2010 (D.E. 12), to which Defendant responded on March 11, 2010. (D.E. 15). Plaintiff then replied in support of its Cross–Motion on March 18, 2010 (D.E. 19). Accordingly, the matters are ripe for disposition.

THE COURT has considered the Motions and the pertinent portions of the record and is otherwise fully advised in the premises.

### Background

This case arises from a dispute over insurance coverage. Plaintiff Falcon Trust Group, Inc. ("Falcon"), an insured, filed suit against its insurer, Defendant Travelers Casualty and Surety Company of America ("Travelers"), in state court seeking (i) a declaration that, *inter alia*, Travelers had a duty to defend and indemnify Falcon in a case styled, *Zurich American Insurance Co., et al. v. Falcon Trust Group, Inc., et al*, Case NO. 07–14016CV40 (Fla. 11th Cir. Ct. May 11, 2007 (the "Zurich Action")), and (ii) damages for Travelers's alleged breach of the insurance contract. On November 17, 2009, Travelers removed the case to this Court.

### A. The Zurich Action

On May 11, 2007, Zurich American Insurance Co. and three other related corporations (collectively referred to herein as "Zurich") filed suit against Falcon in the Eleventh Judicial Circuit in and for Miami–Dade County, Florida.[1] Zurich is an insurance company, and Falcon sold insurance coverage to Zurich's insureds as one of its wholesale insurance agents. (Zurich Complaint ¶¶ 7–8, 10.)

Zurich and Falcon operated under written insurance agency agreement (the "Agency Agreement"), which states in pertinent part:

> All premiums collected by you are our property and are held by you as trust funds. You have no interest in such premiums and shall make no deduction therefrom before paying the same to us, except for commissions, if any authorized by us in writing to be deducted by you and you shall not, under any circumstances, make personal use of such

1. A copy of the Zurich Action complaint can be found at docket entry 1. The Court notes that Adalberto L. Sotero was also named as a defendant in the Zurich Action, but is not a party to this action.

funds either in paying expenses or otherwise. (*Id.* ¶¶ 10, 12.) Zurich alleges that, despite this language, Falcon improperly stopped forwarding Zurich's premiums to them. (*Id.* ¶ 15.) Falcon claimed "for the first time in the parties' eight year relationship[,] that it entered into [a] 'contingency' commission agreement [with Zurich], which depended upon the profitability of its business, and which commissions were allegedly to be paid no later than the termination of the Agency Agreement." (*Id.* ¶ 22.) Zurich alleges that Falcon, however, has never produced a written contingency commission agreement. (*Id.* ¶ 26.) Zurich expressly denies in their complaint that there was ever any such contingency commission between the parties. (*Id.* ¶ 25.) Instead, Zurich argues that the Agency Agreement is the only agreement between the parties, and it requires that all modifications to it (*i.e.,* any commission agreement) be in writing. (*Id.* ¶ 28.)

Because Falcon allegedly stopped forwarding Zurich's premiums based on the alleged contingency commission agreement, Zurich filed suit against Falcon for breach of fiduciary duty, breach of the Agency Agreement, and seeking a declaratory judgment.

## B. The Travelers Insurance Policy

At all material times, Travelers insured Falcon under a duty-to-defend professional liability insurance policy (the "Policy").[2] (Policy, Item 7.) The Policy declarations list Falcon's "professional services" as follows: "Managing General Underwriter for an insurance company or companies in marketing, selling, underwriting and administration of insurance policies to the transportation industry submitted by TPA's and brokers." (Policy, Item 5.)

*Coverage*

The Policy affords coverage, in relevant part, as follows:

I. INSURING AGREEMENTS.

A. The Company shall pay on behalf of the Insured Loss for any Claim first made during the Policy Period or if exercised during the Extended Reporting Period or Run–Off Extended Reporting Period for a Wrongful Act.

The definitions relevant to the above coverage grant are as follows:

II. Definitions

\*　　\*　　\*

H. "Loss" means Defense Expenses and money which an Insured is legally obligated to pay as a result of a Claim, including settlements, judgments, back and front pay, compensatory damages, punitive or exemplary damages if insurance under the applicable law most favorable to the insurability of punitive or exemplary damages, prejudgment and postjudgment interest and legal fees and expenses, awarded pursuant to a court order or judgment. Loss shall not include:

1. civil or criminal fines; sanctions; liquidated damages; payroll or other taxes; penalties; any return, withdrawal, restitution or reduction of professional fees, profits or other charges; or damages or types of relief deemed uninsurable under applicable law.

\*　　\*　　\*

J. "Professional Services" means only those services set forth in ITEM 5

---

**2.** A copy of the Policy can be found at docket entry 1.

of the Declarations that the Insured performs for others for a fee.

\* \* \*

L. "Wrongful Act" means any actual or alleged act, error, omission, misstatement, misleading statement or breach of duty or neglect by or any matter asserted against, an Insured in the rendering or failure to render Professional Services. All related Wrongful Acts are a single Wrongful Act for purposes of this Liability Coverage and all Related Wrongful Acts shall be deemed to have occurred at the time of the first of such Related Wrongful Acts occurred whether prior to or during the Policy Period.

**Exclusions from Coverage**

The Policy also sets forth certain exclusions, including the following:

III. EXCLUSIONS

A. This Liability Coverage shall not apply to, and the Company shall have no duty to defend or to pay, advance or reimburse Defense Expenses for any Claim:

\* \* \*

20. based upon, alleging, arising out of, or in any way relating to, directly or indirectly, any commingling of or failure to segregate funds.

Finally, the Policy contains a "Contingent Commission and Business Practices Exclusion" (the "Contingent Commission Exclusion"), which precludes coverage for a particular Claim as follows:

CONTINGENT COMMISSION AND BUSINESS PRACTICES EXCLUSION

\* \* \*

It is agreed that solely with respect to Liability Coverage shown above, this Liability Coverage shall not apply to and the Company shall have no duty to de-fend or to pay, advance, or reimburse Defense Expenses for any Claim based upon, alleging, arising out of or in any way relating to, directly or indirectly, any actual or alleged:

1. "contingent commission" arrangement to which an Insured is a party, including any arrangement under which an Insured received additional compensation from insurers based on the volume and/or profitability of business placed with a particular insurer.

**Legal Standard**

Summary judgment is authorized only when the moving party meets its burden of demonstrating that "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56. When determining whether the moving party has met this burden, the court must view the evidence and all factual inferences in the light most favorable to the non-moving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970); *Rojas v. Florida*, 285 F.3d 1339, 1341–42 (11th Cir.2002).

The party opposing the motion may not simply rest upon mere allegations or denials of the pleadings; after the moving party has met its burden of proving that no genuine issue of material fact exists, the non-moving party must make a sufficient showing to establish the existence of an essential element to that party's case and on which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Poole v. Country Club of Columbus, Inc.*, 129 F.3d 551, 553 (11th Cir.1997);

*Barfield v. Brierton,* 883 F.2d 923, 933 (11th Cir.1989).

If the record presents factual issues, the court must not decide them; it must deny the motion and proceed to trial. *Envntl Def. Fund v. Marsh,* 651 F.2d 983, 991 (5th Cir.1981).[3] Summary judgment may be inappropriate even where the parties agree on the basic facts, but disagree about the inferences that should be drawn from these facts. *Lighting Fixture & Elec. Supply Co. v. Cont'l Ins. Co.,* 420 F.2d 1211, 1213 (5th Cir.1969). If reasonable minds might differ on the inferences arising from undisputed facts then the court should deny summary judgment. *Impossible Elec. Techniques, Inc. v. Wackenhut Protective Sys., Inc.,* 669 F.2d 1026, 1031 (5th Cir.1982); *see Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) ("[T]he dispute about a material fact is 'genuine,' ... if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.").

Moreover, the party opposing a motion for summary judgment need not respond to it with evidence unless and until the movant has properly supported the motion with sufficient evidence. *Adickes,* 398 U.S. at 160, 90 S.Ct. 1598. The moving party must demonstrate that the facts underlying all the relevant legal questions raised by the pleadings or are not otherwise in dispute, or else summary judgment will be denied notwithstanding that the non-moving party has introduced no evidence whatsoever. *Brunswick Corp. v. Vineberg,* 370 F.2d 605, 611–12 (5th Cir.1967). The Court must resolve all ambiguities and draw all justifiable inferences in favor of the non-moving party. *Liberty Lobby, Inc.,* 477 U.S. at 255, 106 S.Ct. 2505.

*Analysis*

■ The duty to defend is broader than the duty to indemnify; therefore, a determination that there is no duty to defend logically requires a finding that there is also no duty to indemnify. *Philadelphia Indem. Ins. Co. v. Yachtsman's Inn Condo Ass'n, Inc.,* 595 F.Supp.2d 1319 (S.D.Fla.2009). It is well-settled law that an insurer's duty to defend an insured must be determined solely upon the allegations contained within the four corners of the underlying complaint against the insured. *Jones v. Fl. Ins. Guar. Ass'n, Inc.,* 908 So.2d 435, 442–43 (Fla.2005). The actual facts and the insured's version of the facts are irrelevant. *Irvine v. Prudential Prop. & Cas. Ins. Co.,* 630 So.2d 579, 579–60 (Fla. 3d DCA 1993). Rather, the insurer's duty arises "when the complaint alleges facts that potentially bring the suit within policy coverage[,]" even if those facts are incorrect or meritless. *Id.* at 443.

■ Insurance contracts must be construed accordingly to their plain meaning. *Taurus Holdings, Inc. v. United States Fid. & Guar. Co.,* 913 So.2d 528, 532 (Fla. 2005). A policy provision should be enforced, whether it is a basic policy provision or an exclusionary provision, if it is clear and unambiguous. *Id.* (quotation and citation omitted). But if and "when genuine inconsistency, uncertainty, or ambiguity in meaning remains after resort to ordinary rules of construction," then the provision should be construed in favor of the insured. *Id.* (quotation and citation omitted).

■ The parties here do not dispute that Falcon was insured under the Policy at all relevant times. Rather, the dispute

---

**3.** Decisions of the United States Court of Appeals for the Fifth Circuit entered before October 1, 1981, are binding precedent in the Eleventh Circuit. *See Bonner v. City of Prichard,* 661 F.2d 1206 (11th Cir.1981).

is whether the Zurich claims are covered under the Policy, thus triggering Travelers's duty to defend and indemnify Falcon in the underlying Zurich Action. Travelers argues that it is entitled to summary judgment because the Zurich complaint, on its face, precludes any possibility of coverage for two reasons. First, Zurich's claims do not fall within the Policy's coverage because Falcon's alleged failure to forward premiums does not satisfy the policy definitions of "Loss" or "Wrongful Act." Second, even if Zurich's claims fall within the Policy's coverage, the claims are specifically excluded under the Contingent Commission Exclusion and the commingling of or failure to segregate funds exclusion. Because the Court agrees with Travelers that the Zurich claims fall squarely within the Contingent Commission Exclusion, the Court does not address its other arguments.

As stated above, the Policy specifically provides that Travelers has *no duty to defend* any claim "based upon, alleging, **arising out of or in any way relating to, directly or indirectly, any actual or alleged** ... 'contingent commission' arrangement to which an Insured is a party...." (Contingent Commission Exclusion (emphasis added).) Florida courts have held that the terms "arising out of" and "relating to" are unambiguous and should be broadly interpreted. *See, e.g., Taurus,* 913 So.2d at 539.

The crux of the Zurich Action is that Falcon improperly withheld premiums to enforce "its alleged contingency commission agreement via a self-help and setoff against the Zurich Plaintiffs' trust funds." (Zurich Complaint ¶ 30.) Zurich explicitly denies in its complaint that a contingency commission agreement ever existed between the parties, and, on this basis, seeks a declaration that there is not legitimate basis for Falcon's withholding of premiums, a declaration that Zurich may direct-

ly bill its policyholders, the imposition of a constructive trust and/or an equitable lien on Zurich's premiums, and a judgment for damages against Falcon for breach of the Agency Agreement. As such, all of Zurich claims originate from or relate to an alleged contingent commission arrangement that Falcon claims justifies its withholdings.

The Court has considered Falcon's arguments to the contrary but finds them unavailing. Falcon argues that the Contingency Commission Exclusion does not apply because "[t]he underlying lawsuit filed by Zurich includes the Agency Agreement ... [and] [n]owhere within the body of that Agency Agreement does the term 'Contingency Commission' appear." (D.E. 12 at 13.) Falcon argues further that the Contingent Commission Exclusion does not bar coverage because Zurich itself denies that a contingent commission agreement ever existed. (*Id.* at 14.) This argument, however, fails under the plain language of the Contingent Commission Exclusion. The exclusion does not require that the underlying claim be "based upon" an actual contingent commission arrangement, nor does it require that the parties agree that there is in fact a contingent commission arrangement. Rather, the exclusion is far more broad. It applies where a claim *arises out* of or *in any way relates to* (either directly or indirectly) an *alleged* contingent commission arrangement. As explained above, the Zurich complaint is based on claims that arise out of or relate to Falcon's alleged contingent commission agreement. Falcon's argument also fails because, as noted above, the determination of Travelers's duty to defend is based on four corners of the underlying Zurich complaint, and it is irrelevant if any of the facts contained therein are meritless or incorrect. *Irvine,* 630 So.2d at 579–80. In other words, Zurich does not have to agree or acknowl-

edge that a contingent commission exists; Zurich only needs to allege that Falcon claims one exists.

Next, Falcon argues that "[n]owhere in the Zurich lawsuit or in the attached Agency Agreement is the commission structure described as one based on volume/and or profitability of business" and, therefore, the Contingent Commission Exclusion is not triggered. (*Id.*) This is an inaccurate statement. The Zurich complaint clearly alleges: "Falcon now claims ... that it entered into 'contingency' commission agreement, which depended upon the profitability of its business...." (Zurich Complaint ¶ 22.) This alleged agreement is the basis for Falcon's allegedly improper withholdings, and, therefore, relates to Zurich's claims.

Finally, Falcon argues that Travelers should not have relied upon the facts in the Zurich complaint in deciding not to defend Falcon because "Zurich's allegations of [sic] its complaint are refuted by the [Agency Agreement] it attaches to the complaint [and] Zurich's allegations within the body of the Complaint are contradictory to one another." (D.E. 12 at 15.) Falcon then cites *St. Paul Fire & Marine Ins. Co. v. Icard, Merrill, Cullis, & Timm, P.A.*, 196 So.2d 219 (Fla. 2d DCA 1967) in support of its argument that the insurer should provide the insured with a defense when an underlying complaint contains conflicting statements.

■ The Court disagrees that the Zurich complaint contains conflicting or contradictory facts. Zurich attaches the Agency Agreement because that is the agreement they allege controls the parties' relationship. Zurich does not allege that a contingency commission agreement exists and in fact denies that one does. Thus, is not "contradictory" for Zurich to attach the one and only agreement they argue does exist. Further, the Zurich complaint is replete with factual allegations regarding the nature of the parties' relationship and the basis upon which Falcon allegedly withheld Zurich's premiums (*i.e.*, because of an alleged contingency commission agreement which depends on the profitability of its business). This is in stark contrast to the facts of St. Paul, where the court found that the insurer improperly denied defense coverage to its insured because it relied on the allegations of a pro se plaintiff's underlying complaint, which contained nothing more than "derogatory statements and allusions which were not even factual, but patently on their face conjectural conclusions." 196 So.2d at 222.[4]

In sum, the Court finds that Zurich's factual allegations have triggered the Policy's Contingent Commission Exclusion. Accordingly, the Court finds that Travel-

---

4. Because the Court finds that the Contingent Commission Exclusion applies, it is unnecessary to address many of Falcon's arguments as they have been rendered moot. However, the Court notes that it considered but is not persuaded by Falcon's first argument that Travelers's waived the arguments advanced in its Motion for Summary Judgment under Florida Claims Administration Act (the "Act") because it did not raise these arguments in their initial denial letter of May 6, 2008. This is incorrect as a matter of law. The Act prohibits insurers from denying coverage on a "particular coverage defense," unless the insurer has complied with certain enumerated requirements. Fla. Stat. § 627.426. The Florida Supreme Court has held, however, that the Act *does not apply* in cases such as this where there is no coverage. *AIU Ins. Co. v. Block Marina Investment, Inc.*, 544 So.2d 998, 1000 (Fla.1989). The Florida Supreme Court has also stated that "while the doctrine of estoppel may be used to prevent a forfeiture of insurance coverage, the doctrine may not be used to create or extend coverage." *Id.* Thus, because there is no coverage in this case due to the Contingent Commission Exclusion, Travelers did not "waive" its arguments.

ers did not owe Falcon a duty to defend, and therefore a duty to indemnify, in the Zurich Action because the underlying claims in that action fall within the purview of the Contingent Commission Exclusion.

### *Conclusion*

For the foregoing reasons, it is hereby

ORDERED AND ADJUDGED that Traveler's Motion for Summary Judgment (D.E. 10) is GRANTED. It is further,

ORDERED AND ADJUDGED that Falcon's Cross–Motion for Summary Judgment (D.E. 12) is DENIED.